**IN THE COURT OF APPEALS OF IOWA**

No. 21-1944
Filed February 16, 2022

**IN THE INTEREST OF H.M.,**
**Minor Child,**

**K.G., Mother,**
     Appellant,

**D.M., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jessica R. Noll, Sioux City, for appellant mother.

Douglas L. Roehrich, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., Badding, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**SCOTT, Senior Judge.**

A mother and a father separately appeal the termination of their parental rights, contending the juvenile court should have granted them additional time to seek reunification and arguing termination is not in the child's best interests. We affirm on both appeals.

We review termination of parental rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 114 (Iowa 2014).

Our review entails a three-step analysis. We first determine if a ground for termination exists, which allows the court to terminate parental rights. Iowa Code § 232.116(1) (2021); *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). If a ground exists, in determining whether to terminate "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Finally, we must consider if any section 232.116(3) exception weighs against terminating a parent's parental rights. *P.L.*, 778 N.W.2d at 39. It is the State's burden to prove a ground for termination, while "the parent resisting termination bears the burden to establish an exception to termination." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

"When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). Here, the juvenile court terminated both parents' rights pursuant to Iowa Code

section 232.116(1)(h) and (*l*). There is clear and convincing evidence to terminate each parent's parental rights pursuant to section 232.116(1)(h).[1]

Both parents are addicted to illegal substances. Their child, H.M., tested positive for illegal substances when born in May 2020. The parents entered into a safety plan that called for the mother and infant to move in with the maternal grandmother and refrain from using illegal substances. The parents also agreed the father would have only supervised visits with the child and they would not remove the child from the grandmother's home. The parents did not follow the safety plan.

In August 2020, the child was removed from the parents' custody by ex parte order and, in September, H.M. was adjudicated CINA. The child has remained in the grandmother's care.[2] The mother and father have unsuccessfully struggled to address their substance-abuse and mental-health issues. The mother

---

[1] A court may terminate parental rights under section 232.116(1)(h) if it finds all the following:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

"At the present time" means at the time of the termination hearing. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

[2] The mother also has a teenage child who has been living with maternal grandmother for several years under an informal arrangement—"until [the mother] got [her] stuff together."

asked for additional time to achieve sobriety at the time of the permanency hearing in May 2021.

However, at the permanency-review and termination-of-parental rights hearing held in October 2021, each parent acknowledged the child could not be returned to them at that time. While the mother had a residence and employment, she had relapsed in September. She was attending individual therapy sessions but disliked group sessions and did not like attending recommended twelve-step meetings. She was resistant to in-patient treatment, though it was recommended. The mother was on probation and claimed not to know the terms of her probation or the expectations of the juvenile court.

The father had an on-going criminal proceeding, was not employed, and was living with his parents. He stated his last use of illegal substance was just a few days before the hearing and he was not involved in any substance-abuse treatment, though he was hoping to reengage soon. In summary, after more than a year since the child was removed from parental custody, neither parent is any closer to being able to safely parent their child.

In order to allow an extension of time to achieve reunification, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The juvenile court declined to allow an extension of time, finding:

> On May 24, 2021, [the mother] requested the opportunity to complete her treatment by being given six more months and she would be able to have the child returned to her care. [The father]

stated he would be able to complete his obligations to the criminal system within six months and would be able to finish up with treatment after that. It has now been five additional months and both parents have still not addressed their addictions. Now, they request an additional six months to work on completing treatment and maintaining sobriety. [H.M.] has waited long enough for her parents to make her a priority. She has never been returned to either parent's care on a trial home basis. Visits have not moved beyond the two [two]-hour visits per week and have not moved beyond fully supervised. More efforts were made by service providers to assist [the mother] and [the father] than the efforts made by [the mother] and [the father] to help themselves. [H.M.] cannot be returned to the custody of her parents due to their ongoing instability, and failure to participate in substance abuse treatment and mental health treatment. The record is crystal clear. It is not reasonable to conclude that a lifetime of dysfunction, substance abuse, and concerning behaviors can be overcome within a six-month period.

On our de novo review, we come to the same conclusion. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.").

Turning to whether termination of parental rights is in the child's best-interests, the juvenile court observed the child was doing well in the grandmother's care and the grandmother was willing "to permanently integrate [H.M.] into her home should parental rights be terminated." *See* Iowa Code § 232.116(2)(b).

The mother contends that since a relative had legal custody of the child, section 232.116(3) allows the court to deny termination of parental rights. *See id.* § 232.116(3)(a). Here, care, custody and control of H.M. was "transferred to the Iowa Department of Human Services" at the time of removal and remained with DHS at the time of termination. Because DHS is the child's legal guardian, the exception is not applicable. *See A.M.*, 843 N.W.2d at 113.

The father contends a guardianship could be established with grandmother rather than terminate parental rights. He asserts, "Since the outset of this case H.M. has been living with her maternal grandmother, who is ultimately the only option now available for adoption should termination be upheld. Not terminating will not place the child in limbo, as nothing will change." Our supreme court has recognized the limbo of guardianship.

"[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Guardianships do not provide true permanency because, "[b]y their very nature, guardianships can be modified or terminated." *In re E.A.*, No. 20-0849, 2020 WL 4498164, at *2 (Iowa Ct. App. Aug. 5, 2020) (citing *A.S.*, 906 N.W.2d at 477–78). We conclude termination of parental rights and adoption are in the child's best interests. We therefore affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**